Good morning, Your Honors. May it please the Court, my name is Amy Vandeveld, and I represent the Plaintiff and Appellant Linda Butler, and I'd like to reserve three minutes for rebuttal, please. Butler asks that this Court reverse the dismissal of this case as moot, that it reverse the denial of summary judgment, and that it order an injunction in Ms. Butler's favor, and that it reverse the remand of the state claims to state court, and that it enter judgment in her favor on damages claims. First, this case is not moot because Ms. Butler is still suffering irreparable harm. Ms. Butler has never wanted or asked to be forced to use a dog carrier while she shops at Winco. I thought that was the relief she wanted. When they first told her she couldn't carry the dog in the cart, she said she would use her carrier. I thought that was the very first relief she asked for of them. Actually, Your Honor, what she said was that she would try to use a carrier. She's never used a carrier in the past. She doesn't know whether or not a carrier will work. That's what she felt she was forced to do because Winco would not allow her to shop in her usual custom. And the Court even acknowledged that what the Plaintiff wants in this case is to shop with her dog on a pillow. The Court said, quote, apparently Plaintiff would prefer to shop with her dog on a pillow, end quote. It also said Plaintiff argues the accommodation offered by defendant is not one that is reasonable, end quote. The reason Ms. Butler wants to be able to shop with Coco on a pillow is because she knows that Coco can, will, and has alerted that way. Coco alerted on a pillow at Albert Street. Maybe you can explain the difference between a carrier and a pillow. Sure, Your Honor, Coco alerts to seizures by staring at Ms. Butler's face and pawing and scratching at her arms. When she's on a pillow, Coco can easily see Ms. Butler and can easily get to Ms. Butler to paw and scratch for the alert. Ms. Butler doesn't know whether or not Coco will alert when it's in a carrier, and the only way that she'll know that is if she tries it. But if Coco doesn't alert because it's too distracting or distressing for her, Ms. Butler will fall to the ground if she has a seizure because she won't have the alert. And Winco should not force her to make that risk. She made that offer as a last-ditch offer because she was not allowed to shop the way that she had for years, the way that other stores have allowed her to shop. And legally, she's entitled to her choice of an accommodation. If there are myriad ways to accommodate her, she gets to choose. The Department of Justice recently said in the Albonica Statement of Interest in interpreting its service animal regulations, quote, it is not for the school board to determine for the plaintiff the best or most reasonable approach. Defendants cannot force a person with a disability to accept an accommodation they choose not to accept. And there are common-sense reasons for that. But haven't you, for all intents and purposes, you know, gotten what you wanted and won this case? I mean, based on what the actions are of the defendants? No, Your Honor. If Coco is in a carrier, the carrier is going to have to be an open carrier. It's going to be a carrier that will allow Ms. Butler's dog, have to allow Ms. Butler's dog to see her even when it's laying down. Because Coco can't be required to be inhumane to require the dog to lay to stand or sit for the two hours that it takes her to shop at Winco. In addition to that, it has to be open so that Coco can reach Ms. Butler to paw and scratch and can see her. In that instance, there's really no difference between then a pillow or a carrier. And Winco's exception itself is discriminatory. In this case, what they're saying is, she can use a carrier, she's required to use a carrier, and we're going to put a wanted poster up in the break room in order for our employees to know that she gets to have this exception. Butler told the court that this is humiliating and embarrassing and no other customer has to have a wanted poster up in a break room in order to be able to shop at Winco. Under the ADA, Butler is entitled to full and equal access, not just access. She's entitled to equal access and no other customer has to identify herself to shop at Winco or suffer the humiliation of having her picture posted on a wall. You characterize it as a wanted picture. I don't know if you need to do that. It looks like the company here has made significant efforts, and I'm just trying to figure out what a company in Winco's position could do to make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur. It sounds like you're saying that what they've done in terms of allowing the carrier, which I along, I guess, with Judge Wardlaw thought that's kind of what you had asked for on her behalf, but ultimately I guess you want the pillow in the cart. Is that right? That's right, Your Honor, because that's how they have shopped for years. And a change in custom, a change in routine for service dogs, as Ms. Butler's expert said, could adversely affect the ability of the dog to perform its function. And that's the case here. Like I said, Ms. Butler has never tried to shop with a dog in a carrier. And if she did, the carrier would have to be... Where is she shopping now? Where else can she shop in Paris, California? Well, I hesitate to say, Your Honor, because since the beginning of the year, other stores have actually told her that they won't allow her dog on the pillow in a carrier since this case has been filed. They are now adopting the same policy that Winco has, and now she's limited to shopping at the 99-Cent Store, because that's not a member of the California Grocers Association. Where does she get her groceries? She used to shop at Stater Brothers and a food bank, and Vons when they had things on sale. She lives on $800 a month. She's poor. The reason she wanted to shop at Winco is because Winco, as it says, has the best prices around. She could do a month's worth of shopping in two hours of time and live. So when she made the offer of... It was a desperate offer. Please, could I let my dog be in the carrier just so she would be able to afford enough groceries for the month? She's never had to go to a food bank before. She's a proud woman. Since Winco wouldn't let her there with a dog in a pillow like they've shopped, she's had to go to a food bank. Okay, so we're arguing mootness. The district court ruled that the case is moot, right? Yes. And you're arguing the exception to mootness is voluntary cessation. Yes. Because how do we know that tomorrow they won't decide that she can't use the carrier? Yes. Because I feel like you're changing the argument a little bit here today. Well, there are two... Because that's my understanding as well. Now you're saying, well, no, we're not satisfied with just the carrier. We want the pillow and then also, I guess, voluntary cessation. She gets to choose the accommodation she wants under the regulations. As long as it's reasonable. As long as it's reasonable. And Winco has not proven that there is any risk of harm from having a dog on a pillow in the cart seat. As a matter of fact, as I said before, in order for a carrier to work, it would have to be solo, just, in effect, the same thing as a pillow. And in that event, the phantom threat of allergens would be the same. Winco has not offered any medical evidence that refutes Ms. Butler's unrefuted expert testimony from an expert immunologist from UC Davis, an expert allergist from UC San Diego, who say that having dogs in carriers, even dogs in direct contact with carriers, pose minimal threat of harm to other customers, if any. They actually pose less threat of harm than other customers using the carts, and pets and babies and raw food in carts. They say that even that miniscule risk of harm could be alleviated by simply wiping down the cart. So what Ms. Butler wants is, please, let me shop the way I know my dog can shop. Don't make me have to use a carrier, because if the dog doesn't alert, I'm going to suffer injury. And as I said before, the district court acknowledged that that's what she wants. The district court even said, apparently, she wants to shop with a pillow. Asking her to accept a carrier is like this. A person gets in a car accident, and they have $4,000 worth of damage. And they say, person who hit me, pay me $4,000 of money. No, I'm not going to pay you $4,000. Okay, well pay me $3,000. No, I'm not going to pay you $3,000. So then the person files a lawsuit for their property damage and asks for $4,000. And the person says, well, wait a second, all you've asked for is $3,000. That settlement offer, that settlement attempt, isn't what the person is legally entitled to. And in this case, Ms. Butler is entitled to have her dog on a pillow. And the court also committed clear factual error when it found that the exception is permanent, because it relied on the declaration of a store manager, not a corporate officer, a store manager who said, quote, WinCo headquarters has informed me that WinCo has no intention of revoking the exception of the policy. The district court even ruled that store managers for WinCo have no authority to bind WinCo as to any policy changes. So there is nothing in this record that shows that that policy won't be revoked. There's also no evidence that WinCo even actually requires its employees to read the poster. All that C. Ben said was that the memo was, quote, posted in a visible location in the employee break room, so any new lead clerks or assistant managers will be aware of it, end quote. And WinCo itself doesn't even believe that that's enough. When Butler questioned the effectiveness of the memo in her opposition to the motion to dismiss, Ben didn't say, oh, I disseminated the poster, I posted it on the wall, that was enough. What he said was, I held a meeting with assistant managers, lead clerks and department managers, and explained the exception to them. Because WinCo has a very high turnover rate, WinCo would need to have repeated meetings to explain the exception over and over again. That's impractical and it's unworkable. This court should order an injunction just like the one in Fortione v. A&C, which wasn't just targeted to Fortione. As this court said in Bresfall, an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit, even if it's not a class action, if such breadth is necessary to give prevailing parties the relief to which they're entitled. And here, as in virtually any Title III policy case, enforcement of an exception is unworkable and impractical. Basically what they're saying is, we're going to have a policy that allows dogs in the store, we're going to make an exception to that, they're not going to be allowed in grocery carts, but then we're going to make an exception for Ms. Butler. And so for anybody to know that Ms. Butler is that one person that gets to have her dog in the carrier, that singles her out, it draws attention to her, it's humiliating and embarrassing, and Congress said that the purpose of the ADA was to allow people to blend in without fear of stigma, attaching to their exercise of their rights. Being on a list as a rule breaker is stigmatizing, and that's what this is. If she's on a list where she's saying, if she's on a list because she gets to be the one with the exception, then what's going to happen? They're going to have other people that might sue that are going to get on the list, and then an employee is going to have to either bring the list over, bring all the wanted posters over, and say, excuse me, are you Sarah Adams? Okay, how about are you Carol Brown? That Ms. Butler is the latest going out in public. You're over your time. If you want any time for rebuttal, you should probably let's hear from the other side. Thank you. Your Honor, is there any opportunity for rebuttal? Probably. May I leave my binder here then, please? Oh, you don't want to leave your binder there. Oh, well, okay, yes, you may. Is that okay? That's fine. Thank you. Okay, let's understand what WNCO's policy is. This is at ER, or is it 188? Is that WNCO's general policy? The policy, Your Honor, is at ER. Did you say 138? It says, service animal information. WNCO foods allows the use of service animals in our stores unless the animal is out of control and the animal's handler does not take effective action to control it or the animal is not housebroken. Due to sanitary concerns, service animals are not authorized to ride in the carts. Is that the policy that we're fighting about? It is. 138, I don't have that. It says BN 188. Oh, 188. But, yes, what you're reading from is the general policy for other customers other than Ms. Butler. All right, and Ms. Butler asked for a reasonable accommodation. She asked to be allowed to have her dog in the cart so it could be close to her face, and she asked that it be on a pillow. So what is wrong with that? Well, what she asked for was that the dog be allowed in the cart. And, actually, what I'd like to start with, Your Honor, is some quotes on that very topic because I think the court has hit this on the head in terms of what she requested and what she's been granted. If you take a look at the opposition to our motion to dismiss at BN or ER 70 and 71 and 72, you'll see a number of quotes from Ms. Butler in opposition to our motion to dismiss, and I think they're extremely important to what this court is grappling with. At ER 71, Ms. Butler claims that WNCO is attempting to conflate a method of satisfying plaintiff's requested accommodation with the accommodation itself. She goes on to identify putting the dog in the carrier and then putting the carrier in the cart as a, quote, solution to the issue that she's raised. That's at line 12 at ER 72. She goes on to say, ER 73, line 10, that offering an accommodation that allowed her to put Cocoa Beans in a carrier and put the carrier in the cart was, quote, always an option. Okay, but that's really not the issue. That is not the issue. The real issue is whether this case is moot or not moot. Right. And it's a serious, I realize that to some people this might seem like a really trivial issue and put it down in that manner. I don't think it is. I think it's an important issue that under our law that individuals with disabilities have full and equal access to public accommodations. And the question here is, has what you've done really been enough to moot this case? Because there's no injunction. There's nothing that says you won't change the policy tomorrow. You're up here quibbling over words and, you know, which form the accommodation takes. And the real question is, does this come within the voluntary cessation exception to mootness? And I have a real concern about that because you have your store manager at one store saying, oh, we'll make an exception for Ms. Butler. But that's not a real change in the policy, and there's no injunction that will keep you from changing that policy tomorrow. And what about anybody else who's in a similar situation? Okay, let me answer your question a few different ways. And I'd like to start by addressing the standard for this court's review and deciding whether or not the case has been mooted and whether or not the issue is likely to recur. And both sides agree that this court's review is for clear error. The district court here found... Actually, mootness is a question of law. Mootness is a question of law, that's correct. But on these factors, and what the court has really raised is whether or not this conduct is reasonably likely to recur. That's the exception under the voluntary cessation doctrine, which is an exception to mootness. And the question of whether or not it's reasonably likely to recur is a question of fact. The Troiano case in the 11th Circuit held that. The dissent in the Sheely v. MRI case noted that that was an issue. And the district court here focused on an abundance of details, showing my client's unequivocal commitment to this exception. Keep in mind that Ms. Butler faces an extremely unique circumstance that she herself has said is probably unique to her. The eight... I mean, the Rosebrook case, I mean, voluntary cessation of challenged conduct does not ordinarily render a case moot. And the burden to establish mootness is heavy and stringent, especially for private parties. I guess I just want to know, why didn't you just grant her... Why grant her the exception? Why didn't you just change her policy as a whole with respect to this service animal? The answer is, one, she is unique. No other customer, to my knowledge, has ever, and that this record would disclose, ever said, I need to have my service animal in the cart seat in order to accommodate my disability. She is unique. And grocers and retailers are faced with an incredible difficulty under the ADA because they can't interrogate someone who comes in and says, I'd like to put my dog in the cart. But what's your best authority that because it's unique, you don't have to comply? Well, each case, each of the cases under the ADA talks about the particular circumstances that the ADA plaintiff meets. The ADA itself talks about discrimination against the individual. And I would say that if I could focus on... But how do we know that this new policy is entrenched and permanent? I think that's kind of the biggest challenge that you have. And let me go through the list of things that the district court found to be persuasive on this. The declarations of my clients describe dissemination of the exception from the corporate office. The exception is permanent. It is permanent for Ms. Butler. Why didn't you enter into an agreement saying that to making a binding legal commitment that you could not change it? Why is it so easy to have done that? Why didn't you do it? Your Honor, the record doesn't tell me that, and I don't know... Well, your client might tell you that. I mean, you've caused this whole court to spend a fair amount of time on something you could have resolved very quickly by signing a binding agreement. Well, and I think, Your Honor, we have made this permanent. No, you haven't. It's not that clear. So I agree. I was talking with my clerk, and I was thinking, why don't they do a consent decree? Why don't they just agree to an injunction and have the court sign off on it, and then that will be done? That will be over with. But instead, you're here in the Ninth Circuit Court of Appeals telling us that you're the manager of your store, and one store in Paris has agreed to make this very particularized exception. Well, I think the company ought to be held to this and be bound by it and have it be permanent, because I don't... What happens if your manager goes away? Well, the company is bound by it. It is permanent for Ms. Butler. What Ms. Butler is conflating and what is causing the court a lot of concern, I think, is the fact that maybe there's someone else out there like her who might be affected by it. There probably is someone else out there, but we're not even saying you have to agree as to the whole world, but you ought to agree to an injunction and have the judge sign off on it. Your Honor, I don't think that's required respectfully. Because your individual action at one store by a manager who could leave tomorrow is not enough to moot this case, and we respectfully can disagree with Judge Anderson on that point. I think that you may disagree with Judge Anderson on that point. I think we will disagree. I will anyway. But if I may try to change your mind on that, because the question... is whether you should be required to allow her to have the pillow. I don't understand the difference between the pillow and the carrier, frankly. Well, and I believe that the difference is simply one of health and safety for the remainder of... The difference. The pillow, the dog isn't bound in some manner. Is that the concern? Well, with the pillow, no. I think a bed pillow or a dog pillow being placed in the carts is just simply not as sanitary as a dog carrier. I just think the law is very difficult for you in this area. I know that normally in a lot of the cases that you cite all involve like a physical change to a structure. You know, for example, the construction of a wheelchair ramp. But the law is pretty clear, especially for private companies. I mean, government can show it in different ways, but you have to show that it's permanent and entrenched. And I'm just not sure, and I think there's some concerns here, on whether the flyer in the break room is enough. Well, and I don't... Let me address that, because I don't think that... I think that the fact that the exception's been granted from our corporate office, the fact that it was explained in person to all the people who would ever be in a position to discuss this issue, the fact that it is posted in the break room so that people will be aware of it, that future incoming employees will be aware of it, the fact that we've stated we have no intention of revoking this modification that we've granted to Ms. Butler, the fact that the timing, the district court found that we had a strong case on the merits, we didn't have to grant this exception, and the fact that there were novel and very unique and fact-specific issues here. But it needs to be absolutely clear, according to the law in this area, it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. And everything that you're saying seems like it's subject to personnel changes, maybe perhaps in management. I mean, there's nothing out there from the company saying we're going to change the policy permanently. Well, actually, Your Honor, I would direct your attention to the Reid Declaration, which is at ER 18. That is from the corporate office, a letter to Ms. Butler saying we are granting you this exception. I think those facts make it absolutely clear that this exception is not likely to be revoked. Then why not just say we're going to change our policy? And the reason for that, again, is because ADA defendants are in a very difficult position. You see in the amicus briefing, there are a lot of people out there who just abuse the ADA, and there are a lot of people who take their pets into stores. Is there any evidence that Ms. Butler is abusing the ADA? No, but that... Okay, thank you, Counselor. You're over your time. May I have just one moment to wrap up, Your Honor? Okay. I do want to focus this very last point on the idea that an exception is not good enough. It is a policy that is legal to not bring a dog or an animal into a place of business. There is an exception for that for service animals. Service animals must be leashed. There are exceptions to that. The same thing is true for Ms. Butler here. Do you want to encourage my client and defendants like it to find resolution when they can, when it's apparent in the litigation? Yes, and I would like to encourage them to do it in an appropriate way. Thank you, Counsel. Thank you, Your Honor. Okay, you can have a minute because she went over time too. Just three quick points, Your Honors. First, WNCO admitted that other customers with service dogs have been affected by its written service animal policy. That's on page 43 of the plaintiff's opening brief, and cites are, to the record, ER-24, etc. Secondly, in Title III cases, before a person can file a lawsuit, they actually have to make a request for an accommodation before they file the lawsuit. They have to show that the discrimination is based on a discriminatory policy. It seems like one of the outstanding issues here, though, is the use of the care versus the pillow, and let me just follow up on that because I'm spending a lot of time on that, but I want to make sure I understand. It appears from the record your client did not restrict her request for relief to the use of pillows. In fact, while responding to the interrogatories, Ms. Butler acknowledged that her request could be accommodated in different ways, and it's on ER-127. She said, I want to be able to place my service dog in a grocery cart seat with a blanket or pillow or other protection from the metal slats while I shop at the Winco store in Paris, California. It seems that from this record that allowing the animal, the dog, to sit in a car seat carrier was an accommodation that was found acceptable by Ms. Butler prior to and even during the lawsuit, so that's why I was asking the questions with respect to why does it need to be a pillow. In a carrier, the dog is confined. The only way that the cook will be allowed to see Ms. Butler readily is if it has an open dog. No, I understand that, but do you understand what the record shows here? The purpose of that, Your Honor, was it was a pillow or a blanket or some other protection to protect the dog from the slats so that the dog wasn't laying just on metal slats, but it was never, she never wanted to have her dog enclosed that would potentially prohibit the dog from being allowed to... I just don't know that you can change your position now. What kind of a carrier are you talking about? Because some carriers the dog's head is out. I mean, if you have a carrier where the dog's head is out, doesn't that serve the same purpose? Well, it may, but if the dog's head is out, the dog is either sitting up or standing. Ms. Winco, in the record, shops at Winco for two hours because she does her monthly shopping for two hours. It's unreasonable. It's inhumane to ask a dog to sit or stand for two hours. If the dog's been lying down... It's funny that she can find so many kinds of carriers. A pillow with things on it would be a carrier. She lives on $800 a month. Asking her to spend $50 on a carrier, it's not fair. And forcing her, limiting her, forcing her to use a carrier... What was she thinking of when she said a carrier would be fine? No, what she said was, could I try to have my... Well, she said that, but she also said at the interrogatory that she would be satisfied with another form of alternative other than the pillow. And the carrier has been what she'd been using and seemed to be satisfied with the whole time. Respectfully, Your Honor, in this case, she has made clear that of all the options that might work, and again, a carrier might work, of all the options that work, she gets to choose and the one that she wants is a pillow because historically, that works for her. Coco was on a pillow at an Albertson's and alerted her to a carrier. When there's a change in routine, that could adversely impact the dog's ability to perform its function. And I'd also like to say one last thing, Your Honor. This court has found that Title III cases are different than other sorts of illegal policy cases. As this court said in Antonetti v. Chipotle, for the ADA to yield its promise of equal access for the disabled, quote, we must be particularly cautious regarding credibility determinations that rely on a plaintiff's past disabilities act litigation, end quote. And this court should likewise rule that courts should not only be particularly cautious about, they should outright discredit defendants who claim to repent only after they forced a person to file a lawsuit. Because before the lawsuit is filed, that defendant already knows that a request for an accommodation has been made, they know what the request is, and they have forced the plaintiff to file a lawsuit in order to get the relief that should have been granted before the lawsuit was filed. All right. All right. Thank you very much, Counsel. Thank you, Your Honor. Butler v. Winkle Foods may be submitted. We've previously submitted U.S. v. Butler.
judges: Noonan, Wardlaw, Murguia